IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MARCAVAGE : CIVIL ACTION
:
v. :
:
NATIONAL PARK SERVICE, et al. : NO. 09-4594

MEMORANDUM

Bartle, C.J. March 9, 2011

    Plaintiff Michael Marcavage ("Marcavage") brings this action for violations of his civil rights and for battery against the National Park Service, the Department of the Interior, and National Park Service Rangers Alan Saperstein ("Saperstein") and Ian Crane ("Crane").[1]  Before the court is the motion of defendants to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment under Rule 56.

I.

    When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59,

---

1. Marcavage now concedes that his claim for battery is barred for failure to exhaust administrative remedies. See 28 U.S.C. §§ 2675(a), 2679(b)(1). Accordingly, we will dismiss this claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Lightfoot v. United States, 564 F.3d 625, 626-27 (3d Cir. 2009).

64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. On a motion to dismiss, a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). A court may also consider matters of public record. Id.

To the extent that the defendants have filed a motion to dismiss Marcavage's claims on the grounds of sovereign immunity, failure to exhaust administrative remedies, and mootness, the motion for dismissal is properly one under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, not under Rule 12(b)(6). See, e.g., Lightfoot v. United States, 564 F.3d 625, 626-27 (3d Cir. 2009); Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004). When reviewing a facial challenge to subject matter jurisdiction under Rule 12(b)(1), the court accepts the plaintiff's

allegations as correct and draws inferences in the plaintiff's favor. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge to subject matter jurisdiction is one in which a defendant argues that "the allegations on the face of the complaint, taken as true," are insufficient to invoke the court's jurisdiction. Turicentro, 303 F.3d at 300.

Since we rely on nothing in the record beyond what we may consider in deciding a motion under Rule 12(b)(6) and Rule 12(b)(1), it is not appropriate to address the defendants' alternative motion for summary judgment. See Fed. R. Civ. P. 56; Pension Benefit Guar. Corp., 998 F.2d at 1196.

II.

The following facts are viewed in the light most favorable to the plaintiff. On October 6, 2007, Marcavage, using a bullhorn, led an anti-abortion rally of about twenty people carrying graphic signs. He positioned himself and his followers on a sidewalk on the east side of Sixth Street in Philadelphia between Chestnut and Market Streets, in front of the entrance to the Liberty Bell Center at Independence National Historical Park. In addition to the individuals led by Marcavage, there were also present on or about the sidewalk tourists, horse and carriage operators, and a group participating in a walk for the Susan G. Komen Foundation, a national organization dedicated to eliminating breast cancer.

Ranger Saperstein approached Marcavage at approximately 11:45 a.m. and informed him that he could not stand on that section of the sidewalk because it was not designated as a First Amendment area under Park regulations. Saperstein also expressed concern that Marcavage was upsetting visitors to the Park because of the content of his speech and potentially interfering with traffic flow on the sidewalk. He issued Marcavage an oral permit to continue his rally in the grassy area on the opposite side of the Liberty Bell Center, which was open for First Amendment activity under Park regulations. Saperstein contacted Crane, his supervisor, by cellular telephone, and Crane by phone also encouraged Marcavage to move to a different area of the Park. Marcavage refused to comply.

After Marcavage refused several requests to move, Saperstein and other rangers escorted him off the Sixth Street sidewalk several hours later at approximately 2:05 p.m. Saperstein held Marcavage's hands behind his back. He then issued Marcavage a citation for "violating a term or condition of a permit" under 36 C.F.R. § 1.6(g)(2). Later, Marcavage received a citation through the mail for "interfering with agency functions" under 36 C.F.R. § 2.32. Subsequently, a United States Magistrate Judge convicted him of these two misdemeanors. See United States v. Marcavage, No. 08-0511, 2009 WL 2170099, at *1 (E.D. Pa. June 17, 2009) ("Marcavage I"). Applying a clearly erroneous standard on factual matters and plenary review on legal matters, a United States District Judge affirmed the convictions.

See United States v. Marcavage, No. 08-0511, 2009 WL 2170094, at *1 (E.D. Pa. July 16, 2009) ("Marcavage II"). However, on further appeal, the Court of Appeals reversed the convictions. United States v. Marcavage, 609 F.3d 264 (3d Cir. 2010) ("Marcavage III"). While the court held that there was insufficient evidence to support Marcavage's conviction for "violating a term or condition of a permit," it vacated his conviction for "interfering with agency functions" on the ground that it was invalid under the First Amendment.

In Count I of the amended complaint, Marcavage alleges that defendants violated his right of freedom of expression under the First Amendment by "cutting off [his] speech, ordering him to move after issuing a verbal permit, while allowing others to use the same area to engage in their expressive and commercial activities, and then forcibly arresting and removing" him. Count II asserts a claim for violation of the Equal Protection Clause.[2] In Counts III and IV, Marcavage requests declaratory and injunctive relief. Finally, in Count V, Marcavage brings a claim

---

2. The Equal Protection Clause is found in the Fourteenth Amendment applicable only to the states. However, the Fifth Amendment has been construed to contain a guarantee of equal protection applicable to federal officials. See, e.g., Abdul-Akbar v. McKelvie, 239 F.3d 307, 316-17 (3d Cir. 2001) (citing Edmonson v. Leesville Concrete Co., 500 U.S. 614, 616 (1991)). The federal provision is coextensive with the Equal Protection Clause in the Fourteenth Amendment. Id.

for violation of his Fourth Amendment rights stemming from his allegedly illegal arrest.³

III.

Pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, a plaintiff may bring an action for damages against federal officials such as Saperstein and Crane in their individual capacities for violations of constitutional rights. 403 U.S. 388 (1971). However, a Bivens action cannot be pursued against the United States government and its agencies absent a waiver. Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994). Because no waiver has occurred here, the complaint will be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure as to the National Park Service and the Department of the Interior to the extent that Marcavage seeks damages and not injunctive relief. See, e.g., Matsko v. United States, 372 F.3d 556, 558 (3d Cir. 2004).

IV.

We turn now to Marcavage's claims against Saperstein and Crane for violations of his First Amendment rights. Under the First Amendment, "Congress shall make no law ... abridging

---

3. Marcavage titles this claim "False Arrest" under "42 U.S.C. § 1983." However, § 1983 applies to state and local officials, not to federal defendants like Saperstein and Crane. We will construe Marcavage's claim as proceeding under Bivens, which is the federal counterpart to § 1983. See Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001).

the freedom of speech ... or the right of the people peaceably to assemble."  U.S. Const. amend. I.

Defendants assert that <u>Bivens</u> should not be extended to violations of the First Amendment.  The Supreme Court has not specifically decided this issue.  In <u>Ashcroft v. Iqbal</u>, an individual detained pre-trial as a person of "high interest" following the terrorist attacks of September 11, 2001 brought a <u>Bivens</u> action against federal officials, in which he claimed that his First Amendment right to the free exercise of religion was violated.  129 S. Ct. 1937, 1942-44 (2009).  The Court assumed, without deciding, that violations of the First Amendment were actionable under <u>Bivens</u>.  <u>Id.</u> at 1947-48.  It also noted that "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend <u>Bivens</u> liability 'to any new context or new category of defendants.'"  <u>Id.</u> at 1948 (citing <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001)).

In <u>Paton v. La Prade</u>, our Court of Appeals considered this same issue.  524 F.2d 862, 869-70 (3d Cir. 1975).  There, a high school student sought damages after the Federal Bureau of Investigation conducted an investigation into her correspondence with the Socialist Workers Party.  <u>Id.</u> at 865-66.  The court explained that since it had already recognized a claim for violation of the First Amendment right to free speech under 42 U.S.C. § 1983 against state officials, there was "no reason to allow federal officials to act with impunity in this context."  <u>Id.</u> at 870.  The court held that the extension of <u>Bivens</u> to

-7-

redress violations of the First Amendment was "both justifiable and logical." Id. Until the Supreme Court explicitly declares otherwise, we are bound by the decision of our Court of Appeals. See generally Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984). We conclude that violations of the First Amendment are actionable under Bivens.

Defendants also argue that because Marcavage succeeded in having his conviction overturned by our Court of Appeals, he already has had an adequate remedy and thus is not entitled to bring an action under Bivens. We are not persuaded. In Bivens, the Supreme Court recognized that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." 403 U.S. at 395. Under Heck v. Humphries, Marcavage could not bring a Bivens action *until* his criminal conviction was reversed on appeal or otherwise invalidated. 512 U.S. 477, 484-87 (1994). We decline to dismiss Marcavage's Bivens claim on this ground.

Similarly, defendants' argument that Marcavage has an adequate remedy under the Hyde Amendment fails. See 18 U.S.C. § 3006A note (1997) (Attorneys Fees and Litigation Expenses to Defense). The Hyde Amendment allows the court in a criminal case to award attorneys' fees to a prevailing defendant if "the position of the United States was vexatious, frivolous, or in bad faith." Id. Awards under this provision are rare and the opportunity to prevail is much more difficult than under Bivens. See, e.g., United States v. Truesdale, 211 F.3d 898, 908 (5th

Cir. 2000); United States v. Gilbert, 198 F.3d 1293, 1304 (1st Cir. 1999).  We reject the notion that the possibility of an award of attorneys' fees under the Hyde Amendment after the defendant is exonerated in a criminal case precludes an action for constitutional injury under Bivens.

Defendants next argue that qualified immunity bars any recovery by Marcavage.  Under the doctrine of qualified immunity, we must ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Scott v. Harris, 550 U.S. 372, 377 (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  We must also inquire "whether the right was clearly established ... in light of the specific context of the case."  Id.  Unless both prongs are satisfied, the defendants are entitled to qualified immunity.  Under Saucier, district courts were required to address the first question of whether there was a constitutional right before turning to the second question.  533 U.S. at 200-01.  More recently, the Supreme Court, receding from Saucier, has held that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case at hand."  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

The parties do not dispute that Marcavage's First Amendment right to freedom of speech was violated.  The Court of Appeals so held when overturning his conviction for "interfering

with agency functions" under 36 C.F.R. § 2.32. See Marcavage III, 609 F.3d at 291. Consequently, the entitlement of Saperstein and Crane to qualified immunity rests on whether the violation of Marcavage's right to free speech in the context of this case was clearly established at the time of his arrest.

A constitutional right is clearly established only if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Assaf v. Fields, 178 F.3d 170, 177 (3d Cir. 1990) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Thus, qualified immunity protects officials from suit unless they are "plainly incompetent" or "knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Courts must make an "accommodation for reasonable error." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam).

Qualified immunity may be granted "where there is 'at least some significant authority' that lends support" to the conduct at issue. Doe v. Groody, 361 F.3d 232, 243 (3d Cir. 2004) (quoting Leveto v. Lapina, 361 F.3d 156, 166 (3d Cir. 2001)). Thus, "[i]f judges ... disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." Wilson v. Layne, 526 U.S. 603, 618 (1999). Officials will not be liable for constitutional violations merely because their position "turned out to be incorrect" if "the question was open at the time [they] acted." Mitchell v. Forsyth, 472 U.S. 511, 535 (1985).

Whether the First Amendment is violated depends, in part, on where the speech takes place: (1) in a traditional public forum; (2) in a designated or limited public forum; or (3) in a nonpublic forum.[4] Gregoire v. Centennial Sch. Dist., 907 F.2d 1366, 1370 (3d Cir. 1990). It further depends on whether the restrictions put in place by the government were content-based or content neutral. See, e.g., Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006).

In a public forum, content-based restrictions on speech are invalid unless they: (1) serve a compelling governmental purpose; (2) are narrowly tailored to that interest; and (3) are the least restrictive means of achieving that purpose. ACLU v. Mukasey, 534 F.3d 181, 190 (3d Cir. 2008). In contrast, content-based restrictions must meet a reasonableness standard in a nonpublic forum. Gregoire, 907 F.2d at 1370. Under this standard, restrictions can be based on "subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."[5] Id. (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 806 (1985)). In other words, exclusion of a

---

4. Neither party has ever argued that the Sixth Street sidewalk was a limited or designated public forum. See Marcavage III, 609 F.3d at 274-75. Thus, we will limit our discussion to the other two types of fora.

5. Viewpoint discrimination is a more "egregious form of content discrimination." Startzell v. City of Philadelphia, 533 F.3d 183, 193 (3d Cir. 2008) (quoting Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995)).

speaker based on the content but not the viewpoint of the speech is permissible in a nonpublic forum. Cornelius, 473 U.S. at 806.

Streets and sidewalks are presumed to be public fora. Marcavage III, 609 F.3d at 275 (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983); Startzell v. City of Philadelphia, 533 F.3d 183, 196 (3d Cir. 2008)). However, "not all public sidewalks constitute public fora for First Amendment purposes." Id. (citing McTernan v. City of York, 577 F.3d 521, 527 (3d Cir. 2009)); see also United States v. Kokinda, 497 U.S. 720, 727 (1990). Instead, "[t]he question of whether a particular sidewalk is a public or nonpublic forum is highly fact-specific and no one factor is dispositive." Marcavage III, 609 F.3d at 27.

While the Court of Appeals held thereafter that the Sixth Street sidewalk was a public forum, the Magistrate Judge and the District Judge had concluded that it was a nonpublic forum, although incorrectly as it turned out. The District Judge reasoned that the Sixth Street sidewalk is separated from the street by chain-link fencing and metal bollards. Marcavage II, 2009 WL 2170094, at *8. It is also patrolled by Park Service rangers and typically occupied by a line of people waiting to visit the Liberty Bell. Id. Thus, the District Court decided that the sidewalk "was not an open location where people could relax and enjoy the company of their friends, but rather, it was a relatively narrow, often highly congested area with the specific and limited purpose of providing access to and from the

Liberty Bell Center." Id. The Magistrate Judge had previously included similar language in his findings of fact and conclusions of law. See Marcavage I, 2009 WL 2170099, at *3-4.

Under federal regulations, park superintendents can "impose public use limits, or close all or a portion of a park area to all public use or to a specific use or activity" through brochures, maps, and other methods of giving public notice. 36 C.F.R. §§ 1.5(a); 1.7(a). Pursuant to these regulations, the Superintendent of Independence National Historical Park, where the Liberty Bell Center is located, promulgated a Compendium regarding permit requirements and other restrictions. The Compendium in effect at the time of Marcavage's arrest did not designate the Sixth Street sidewalk as one of the areas open to the public for First Amendment activity. See Independence National Historic Park, Superintendent's Compendium 26 (2004). Additionally, the Compendium did not include the Sidewalk in a map of authorized public assembly areas. Id. at app. D. Instead, the Compendium provided for First Amendment activity in other designated areas in and around the Park. Id. Park Rangers such as Saperstein and Crane should not be asked to choose between enforcing park regulations and being subjected to suit for money damages. See Pierson v. Ray, 386 U.S. 547, 555 (1967).

In our view, it was not clearly established that the Sixth Street sidewalk was a public forum at the time of Marcavage's arrest. While the Court of Appeals ultimately decided that it was, the question was open at the time. As

previously noted, the decisions of the Magistrate Judge and District Judge, as well as the Park regulations, supported the notion that the place in question was a nonpublic forum. We do not believe that Saperstein and Crane should be subject to damages for "picking the losing side of the controversy" regarding the status of the forum. Wilson, 526 U.S. at 618.

Content-based restriction of speech is permissible in a nonpublic forum so long as it is based on subject matter, but not viewpoint. Gregoire, 907 F.2d at 1370. The Court of Appeals determined that the defendants' actions were not based on viewpoint discrimination. It found no evidence in the record that "the rangers exhibited a preference for a *different* abortion message than the one Marcavage espouses. Rather, if anything, the rangers tried to stamp out *any* abortion-related communication." Marcavage III, 609 F.3d at 280 n.11. Thus, the action of the rangers was simply content-based.

Restrictions based on content in a nonpublic forum must be reasonable in light of the purposes served by the forum. Gregoire, 907 F.2d at 1370. Here, Marcavage was using a bullhorn and his followers were carrying graphic signs depicting mutilated fetuses. Marcavage III, 609 F.3d at 283. In its opinion, the Court of Appeals noted that Saperstein and Crane were concerned that Marcavage was upsetting the visitors waiting in line to see the Liberty Bell Center. Id. at 282. These visitors included small children. Id. Thus, the content-based speech restrictions were reasonable in light of the purposes of the forum, which

include providing access by persons of all ages to an historic landmark.  Id. at 291.

As the Court of Appeals recognized, Saperstein and Crane "on the whole treated Marcavage and his group with courtesy and respect and comported themselves with no small amount of restraint and patience."  Marcavage III, 609 F.3d at 291.  In addition, the court noted that their duties were "no easy undertaking," but that "the scale tip[ped] in Marcavage's favor."  Id.  In light of all the circumstances, defendants were not "plainly incompetent" and had not "knowingly violated the law."  See Malley, 475 U.S. at 341.  Saperstein and Crane are entitled to qualified immunity on the ground that Marcavage's claim under the First Amendment was not clearly established at the time of his arrest.  Accordingly, that claim will be dismissed under Rule 12(b)(6).  See Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006).

V.

Saperstein and Crane also argue that qualified immunity bars Marcavage's Fourth Amendment claim in Count V of the amended complaint.[6]  To prove his Fourth Amendment violation, Marcavage

---

6. Crane argues that Marcavage has not pleaded sufficiently his involvement in the seizure to support a Fourth Amendment violation.  It is true that liability under Bivens cannot be based on a respondeat superior theory, but rather a plaintiff must allege personal involvement in the seizure.  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  However, "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.  Because Crane purportedly communicated with and directed (continued...)

must show that officials acted without probable cause in arresting him. Probable cause exists if there are sufficient facts "to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Probable cause does not need to exist for all offenses charged. Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) (citing Edwards v. City of Philadelphia, 860 F.2d 568, 575-76 (3d Cir. 1988)). Rather, it is sufficient that it exists as to only one. Id. If a statute or regulation relied upon is ultimately deemed unconstitutional, "it does not necessarily follow that the arresting officers are civilly liable for the arrest." Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005).

Here, Marcavage received a citation "for interfering with agency functions." See 36 C.F.R. § 2.32. This regulation prohibits "resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty." Id. Our Court of Appeals decided that there was sufficient evidence to support Marcavage's conviction on this charge. See Marcavage III, 609 F.3d at 272. A conviction requires proof of guilt beyond a reasonable doubt, a standard much higher than that required for a finding of probable cause. Orsatti v. New Jersey

---

(...continued)
Saperstein throughout the incident, Marcavage has alleged sufficient facts to demonstrate Crane's involvement in the arrest.

-16-

State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Because the Court of Appeals found sufficient evidence to support the conviction, defendants cannot be found to have been objectively unreasonable in believing that they had probable cause to escort Marcavage off the Sixth Street sidewalk and issue him a citation.[7]

Therefore, we will dismiss Marcavage's Fourth Amendment claim on qualified immunity grounds under Rule 12(b)(6).

VI.

In Count II, Marcavage pleads a claim for violation of his rights under the Equal Protection Clause. Saperstein and Crane do no allege that qualified immunity applies here. Instead, they assert that Marcavage has not stated a claim upon which relief can be granted.

To state a claim under the Equal Protection Clause, a plaintiff must show that: (1) the defendant treated him or her differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant

---

7. Because probable cause existed as to one of the offenses that Marcavage could have been charged with at the time of his arrest, we need not address Marcavage's conviction for violating the terms of a permit under 36 C.F.R. § 1.6(g)(2). See Barna, 42 F.3d at 819.

aspects.'" Startzell, 533 F.3d at 203 (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).

In essence, Marcavage argues that he was treated differently from other groups present on the Sixth Street sidewalk at the time of his arrest:  (1) the horse and carriage operators; (2) the walkers dedicated to eliminating breast cancer; and (3) tourists and other visitors to the Liberty Bell. As our Court of Appeals recognized, these other groups gathered in large groups and close to the entrance of the Liberty Bell. Marcavage III, 609 F.3d at 288-89.  In response, the government asserts that these groups were not similarly situated to Marcavage.

None of the breast cancer walkers and the visitors to the Liberty Bell remained on the Sixth Street sidewalk for nearly as long a period of time as Marcavage.  He and his group were present for over two hours, from before 11:45 a.m. until approximately 2:05 p.m., when he was escorted off the premises by Saperstein and other rangers.  Unlike the other persons, he "both spoke with and preached to passers-by and people waiting in line to enter the Liberty Bell Center, for a while with the aid of a bullhorn."  Marcavage III, 609 F.3d at 270.

We also note that under federal regulations, horse and carriage operators may perform business in the Park only pursuant to a valid permit.  36 C.F.R. § 5.3; see also Society Hill Carriage Co., Ltd. v. Nat'l Park Serv., 709 F. Supp. 105, 105-06 (E.D. Pa. 1989).  These permits limit carriage operators to

certain designated zones around the Park.  Society Hill Carriage
Co., 709 F. Supp. at 106.  In contrast, Marcavage and his group
were present at the Park without a permit.

The touchstone of any equal protection inquiry is
whether all the groups involved were alike "in all relevant
aspects."  Startzell, 533 F.3d at 203 (quoting Nordlinger, 505
U.S. at 10).  Here, they simply were not.  Marcavage's conclusory
allegation that "thousands of others were allowed to engage in
free speech and commercial speech, without any restriction"
cannot make out a "plausible claim for relief."  See Fowler v.
UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting
Iqbal, 129 S. Ct. at 1950)).

We will grant the motion of the government to dismiss
Count II for failure to state a claim under Rule 12(b)(6).

VII.

Finally, the government asserts that Marcavage's claim
for injunctive and declaratory relief should be denied as moot.
Since Marcavage's arrest, the National Park Service has issued
new regulations exempting groups of under twenty-five individuals
from permit requirements.  See 36 C.F.R. § 2.51(b)(1).  The Park
Service has also revised its regulations to designate the Sixth
Street sidewalk as a public area open for First Amendment
activity.  See Independence National Historic Park,
Superintendent's Compendium § III.B (2010).  We presume that the
Park Service will act in accordance with its own regulations and
the law as announced by our Court of Appeals in Marcavage III.

See Perkins v. Matthews, 400 U.S. 379, 394 (1971) (citing First Nat'l Bank of Albuquerque v. Albright, 208 U.S. 548, 553 (1908)). Therefore, Marcavage cannot show that he will "again be subjected to the alleged illegality." Los Angeles v. Lyons, 461 U.S. 95, 109 (1969) (citing DeFunis v. Odegaard, 416 U.S. 312, 319 (1974)).

Consequently, the claims of Marcavage in Counts III and IV for declaratory and injunctive relief will be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). See, e.g., Weiss, 385 F.3d at 340.